[No. 13313. Department Two. June 20, 1916.]

## W. H. MITCHELL, *Appellant*, v. BERLIN-McNITT COMPANY et al., *Respondents*.[1]

MUNICIPAL CORPORATIONS—CONTRACT FOR PUBLIC IMPROVEMENT—CONSTRUCTION. Under a contract for public work for a city, wherein the contractor agreed "to pay the wages of all persons and for assistance of every kind upon or about said work, and for all materials purchased therefor," and authorized the city to withhold payments until such wages, assistance and materials were fully paid for, the city was not warranted in withholding money for the purpose of paying claims for meats and groceries supplied a subcontractor, such articles not falling within the terms "assistance of every kind employed," nor of "materials," the latter term applying only to materials entering into the structure.

SAME. The rule rendering a public contractor liable on his bond for the price of all goods necessary to the performance of his contract does not apply when the action is not upon the bond but is one involving the construction of the contract between the city and the contractor.

MUNICIPAL CORPORATIONS—CONTRACT FOR PUBLIC WORK—ESTOPPEL OF CONTRACTOR. The fact that a public contractor had assured firms supplying provisions to a subcontractor that he had made arrangements to accept orders drawn on him by the subcontractor, to be turned over to a third party for payment, would not estop the contractor from claiming a particular fund retained by the city for the purpose of meeting such claims, where he accepted such orders and there was no misrepresentation or breach of promise on the part of the contractor, but the fund in the hands of the third party had been dissipated by payment to preferred creditors instead of by application *pro rata* to all the creditors.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered September 20, 1915, upon findings favorable to certain claimants, in an action to determine the liability on a contractor's bond. Reversed.

*Weter & Roberts*, for appellant.

*Dysart & Ellsbury* and *C. D. Cunningham*, for respondent Berlin-McNitt Company.

*Higgins & Hughes* and *William E. Froude* (*Hyman Zettler*, of counsel), for respondent Frye & Company.

[1]Reported in 158 Pac. 264.

HOLCOMB, J.—On December 15, 1913, appellant entered into a contract with the city of Centralia for the construction of a gravity water system. Pursuant to the contract, appellant as principal, and the Maryland Casualty Company as surety, executed a bond conditioned for the faithful performance of the contract. On account of the location of part of the work it was necessary to maintain a boarding camp to feed the men employed there, and appellant executed another contract with one McDermott, a subcontractor, by virtue of which agreement McDermott agreed to maintain a boarding house and feed the men employed by appellant, for a stipulated sum per week. Appellant fully completed his contract and the work was accepted by the city of Centralia. McDermott also entered on the performance of his contract but failed to pay for certain provisions, viz., meats and groceries used for feeding the men and furnished to McDermott by respondents Berlin-McNitt Company and Frye & Company, who thereupon filed their claims for the same with the clerk of the city of Centralia. The amounts of these claims, together with others not material to this appeal, were withheld by the city of Centralia from the amount owing to appellant on the contract. Appellant and the Maryland Casualty Company then instituted this suit to determine the amount and validity of these claims. All the claimants were made defendants, and they by way of cross-complaint sought to hold the fund retained by the city of Centralia and to secure a judgment against appellant and the Maryland Casualty Company. After a trial on the merits, the court below refused to enter a judgment on any of the claims against the Maryland Casualty Company or a personal judgment against appellant, but held that certain of the claimants were entitled to designated amounts of the funds withheld by the city, and ordered the payment of the same. Appellant has appealed from that portion of the judgment directing the payment of $780.05 to respondent Frye & Company and $521.45 to respondent Berlin-McNitt Company.

As the court refused to give any judgment on the bond, the correctness of the ruling of the trial court must depend on the construction of the contract between appellant and the city of Centralia, and the sole question raised by this appeal is whether meats and groceries are included within § 15 of that contract, which reads as follows:

"The said contractor agrees to pay the wages of all persons and for assistance of every kind employed upon or about said work, and for all materials purchased therefor, and the city of Centralia may withhold any and all payments under this contract until satisfied that such wages, assistance and materials have been fully paid for."

It is maintained by respondents that meats and groceries are included within the phrase "and for assistance of every kind employed;" but from the ordinary meaning of the words "assistance" and "employed" as judged by common usage they pertain to some kind of services rendered, and this theory is strengthened by the position of this phrase in relation to the whole paragraph as it is directly connected with "to pay the wages of all persons" and separated by a comma from the phrase "and for all materials purchased therefor;" and since both the words "persons" and "assistance" are coupled with "employed," while "materials" alone is coupled with "purchased," we are led to the irresistible conclusion that this phrase was not intended to include meats and groceries but referred only to something in the nature of services, as respondents' contention would make the phrase "and for materials purchased therefor" mere surplusage.

It is also urged that groceries and meats are included within the word "materials;" but in *Armour & Co. v. Western Construction Co.*, 36 Wash. 529, 78 Pac. 1106, the court held squarely to the contrary. It is true that the court was there construing a lien statute the construction of which is more strict, and that where the relation is purely contractual, as here, the construction is more liberal. We are not inclined to hold that "materials" means groceries and meats,

as it is substantially settled in this state what are materials in cases of this character, and its definition has never been extended to such an extent as to embrace provisions within its meaning, and we are unable to find any authority to that effect. We have uniformly held that material is something that enters into the structure subject to a lien. Mr. Webster defines material as "the substance or matter of which anything is made or may be made." It is evident that meats and groceries are not included within the terms of this definition, which is as broad as respondent could contend for.

The purpose of a provision of this character in a contract, as well as the bond required by law to be given by a contractor doing public work, is to take the place of a lien which does not lie against a municipality to insure to laborers and materialmen their pay, to the end that the municipality may make a more advantageous contract.

The authorities seem to sustain a more liberal rule in allowing recoveries for items in an action on a bond furnished by a contractor doing public work than in an action to foreclose a lien, and hold that on a bond furnished by a contractor the recoverable items are not limited to lienable items but the purchase price of all materials furnished may be recovered, whether lienable or not, if they were necessary to complete the contract. *United States, Use of Standard Furniture Co. v. Aetna Indemnity Co.*, 40 Wash. 87, 82 Pac. 171; *Zipp v. Fidelity & Deposit Co.*, 73 App. Div. 20, 76 N. Y. Supp. 386.

As it appears from the evidence that, on account of the locality of the work, meats and groceries to feed the men employed were necessary to complete the contract, respondents contend under the authority of the rule quoted above that they must prevail. But the cases in which this rule is announced are actions against the bonds, which bonds are conditioned to the faithful performance of the contract. It necessarily follows that, when those parties, by signing the bond, contract that they shall be liable unless the contract is

faithfully performed, they are liable for the price of all goods necessary to the performance of the contract by the very terms of the bond itself. But this rule is not applicable to the case at issue since there is no question on this appeal as to the liability on the bond but simply a question of the construction of the contract between appellant and the city of Centralia. Although liability was sought to be enforced against the bond, the trial court refused to enforce such liability and this portion of the judgment was not appealed from.

It is significant that the bond given by appellant was also conditioned that appellant should pay all persons supplying laborers, mechanics, or subcontractors with materials, *supplies or provisions*, and shows that respondents were not without a source of recovery of their claims, and that, in this instrument at least, provisions were not thought by the parties to be included in materials, and throws some light on the construction of the word "material" as used in the contract as these instruments were all parts of the same transaction.

The case of *Baker City Mercantile Co. v. Idaho Cement Pipe Co.*, 67 Ore. 372, 136 Pac. 23, cited by respondents, is clearly distinguishable from the present case though the court did say there that all the goods furnished by plaintiff, such as provisions, were necessary in the construction of the conduit and were embraced within the terms of the original contract with the city, and thus held the contractor liable. But it also appears that the liability attached by reason of an express oral contract between the plaintiff and the contractor, to the effect that the contractor would pay plaintiff for these supplies by holding out that amount on the wages of the men. In the case here the liability is sought to be enforced by virtue of § 15 of the contract between appellant and the city of Centralia, and the goods were not sold to appellant but to McDermott. While there is some testimony to the effect that appellant told respondents that he had

made an arrangement to accept orders drawn on him by McDermott, to be turned over to Hartman & Nathan to pay off McDermott's creditors, there is no evidence that appellant agreed to pay respondents for the goods they furnished McDermott, nor do respondents base their right to recover on that theory.

Finally, respondents suggest that, if the fund retained by the city of Centralia does not protect respondents, appellant at least should not be heard to claim it as he induced respondents, according to their testimony, to part with their property on the assurance to respondents that he had made arrangements to accept orders drawn on him by McDermott for all the money that he owed McDermott, to be turned over to Hartman & Nathan for the purpose of paying off McDermott's creditors. This suggestion should not prevail since there is no evidence that these orders were to be drawn on the particular fund now retained by the city of Centralia, and, so far as the record discloses, appellant did accept orders drawn on him to the amount of his indebtedness to McDermott, thus performing his promise in this respect. The fact that respondents were not paid in full was not due to any misrepresentation or breach of promise on the part of appellant that would create an estoppel, but because the fund was not applied to the different creditors *pro rata* by Hartman & Nathan, some of the preferred creditors being paid off first, thus dissipating the fund.

The judgment is reversed.

MORRIS, C. J., PARKER, MAIN, and BAUSMAN, JJ., concur.